**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| SHARI NIVASCH and MICHELLE KOSO, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No.  25-cv-5484 |
| v. | ) |
| | ) |
| VILLAGE OF NORTHBROOK, ILLINOIS, | ) |
| JOHN USTISH and MARC FAINMAN | ) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |

**COMPLAINT**

NOW COME, SHARI NIVASCH (Shari) and MICHELLE KOSO (Michelle) (collectively

Plaintiffs), by and through their undersigned attorneys, Cass T. Casper, Esq., DISPARTI LAW

GROUP, P.A., and David Petrich, Esq., SANDMAN, LEVY, & PETRICH, LLC, and state as

follows for their Complaint against the VILLAGE OF NORTHBROOK, ILLINOIS, JOHN

USTISH, and MARC FAINMAN (collectively Defendants).

1.  This case involves egregious violations of constitutional rights perpetrated against two

dedicated mental health professionals - Shari, a clinical counselor with 27 years of experience

including 16.5 years of service to the Village of Northbrook, and Michelle, a Clinical Social Worker

hired in October 2023.

2.  On April 3, 2025, Defendant Deputy Chief Marc Fainman conducted an unlawful search of

Plaintiff Nivasch's personal cell phone, exceeding the scope of her limited consent by accessing

messages dating back to February 28, 2025, viewing private vacation photos, and recording private

medical information. Similarly, Defendants demanded access to Plaintiff Koso's work phone and

threatened to search her personal phone despite her explicit non-consent.

3.  The searches were conducted in retaliation for Plaintiffs' protected speech, including private

text messages between coworkers discussing workplace conditions, management criticism, and employment terms. Plaintiff Nivasch had previously engaged in protected speech through formal complaints, including a 2021 sexual harassment complaint against then-Commander Hanselman and reports of hostile work environment.

4. Following the unconstitutional searches, both Plaintiffs were terminated on April 28, 2025, despite having clean prior disciplinary history. The terminations represent clear retaliation for their protected speech and resistance to unlawful searches, demonstrating a pattern of constitutional violations by the Defendants.

5. This action seeks redress for violations of Shari's Fourth Amendment right against unreasonable searches, and for retaliation against both Plaintiffs in connection with their opposition to sexual harassment, as well as compensation for damages including loss of employment, damage to professional reputation, emotional distress, and loss of planned retirement benefits.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

7. This Court has jurisdiction to award attorneys' fees pursuant to 42 U.S.C. § 1988.

8. Supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367 because the factual allegations and claims are so related as to form part of the same case and controversy.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have their

principal places of operation in Cook County, Illinois, and all acts and omissions giving rise to Plaintiffs' claims occurred in Cook County, Illinois, within the Northern District of Illinois, Eastern Division.

## PARTIES

10. Plaintiff Shari is a legal adult and resident of Cook County, Illinois. At all relevant times, she was employed as a Clinical Counselor by the Village of Northbrook for 16.5 years, with 27 years of total professional experience in her field. She served in this capacity until her termination on April 28, 2025.

11. Michelle is a legal adult and resident of Cook County, Illinois. She was employed as a Clinical Social Worker by the Village of Northbrook from October 26, 2023, until her termination on April 28, 2025. Michelle has been in her field of clinical social work for over a half decade.

12. Defendant Village of Northbrook is a municipal corporation organized under the laws of the State of Illinois, with its principal place of business in Cook County, Illinois.

13. Defendant Deputy Chief Marc Fainman is a legal adult and resident of Cook County, Illinois. At all relevant times, he was employed as a Deputy Chief by the Village of Northbrook Police Department and acted under color of state law.

14. Defendant Police Chief John Ustich is a legal adult and resident of Cook County, Illinois. At all relevant times, he was employed as the Police Chief by the Village of Northbrook Police Department and acted under color of state law.

15. At all times relevant to this Complaint, all individual Defendants were acting under color of state law and within the scope of their employment with the Village of Northbrook.

## ADMINISTRATIVE PREREQUISITES

16. Plaintiffs have filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for their terminations as in retaliation for Shari's sexual harassment complaint she filed on or about June 29, 2021 and for Shari's and Michelle's support of that sexual harassment complaint in Fall 2024 and early 2025 when Acting Deputy Chief Hanselman was being considered for promotion to full Deputy Chief and the complaint became the subject of discussion around the police department in Fall 2024.

17. Plaintiffs timely filed their administrative charges following their terminations, within 300 days of April 28, 2025.

18. Plaintiffs intend to request right to sue letters once 60 days have elapsed from the filing of the EEOC Charges.

19. Defendant Northbrook has a good and ample opportunity to resolve Plaintiffs' Charges during the EEOC proceedings.

20. Plaintiffs request to stay the Title VII and Illinois Human Rights Act counts until they receive right-to-sue letters.

## FACTS COMMON TO ALL COUNTS

21. Shari has served as a Clinical Counselor with the Village of Northbrook for 16.5 years, maintaining an exemplary employment record with no prior disciplinary actions throughout her tenure.

22. In 2021, Plaintiff Nivasch reported sexual harassment by then-Commander Jamie Hanselman to Chief Kennedy. In response, Chief Kennedy made implied threats regarding Plaintiff Nivasch's professional license rather than addressing the harassment complaint.

23. During Fall 2024, the Village distributed an employee satisfaction survey in which Plaintiff

4

participated and expressed concerns about workplace conditions.

24. In January 2025, Plaintiff Nivasch reported workplace concerns to Chief Ustich and Deputy Chief Fainman, exercising her protected right to raise issues about working conditions and management practices.

25. On March 18, 2025, Plaintiff Nivasch inadvertently sent text messages intended for Plaintiff Michelle Koso to Director Nancy Vaccaro. Plaintiff Nivasch asked Director Vacarro to disregard such messages, with the expectations that they would be deleted.

26. These private text messages contained protected speech between coworkers discussing workplace conditions, management criticism, and employment terms.

27. On April 2, 2025, Director Vaccaro reported the accidental text messages to administration, despite their protected nature as private communications between coworkers regarding workplace conditions.

28. On April 3, 2025, Defendant Deputy Chief Marc Fainman conducted an investigatory meeting during which he demanded to see Plaintiff Nivasch's personal cell phone.

29. Plaintiff Nivasch provided limited consent to review only specific March 2025 messages related to the accidental text incident.

30. Deputy Chief Fainman exceeded the scope of this limited consent by:

    a. Searching messages dating back to February 28, 2025;

    b. Accessing and viewing private vacation photos;

    c. Recording video of the entire message thread;

    d. Accessing private medical information.

31. During the same April 3 investigation, Defendants demanded access to Plaintiff Koso's work phone and threatened to search her personal phone, despite her explicit statement of non-consent.

5

32. Both Plaintiffs were subjected to intrusive and unconstitutional searches of their private communications without proper legal justification or authority.

33. The searches were conducted without warrants, probable cause, or exigent circumstances that would justify such invasive examination of personal communications and data.

34. On April 28, 2025, both Plaintiffs were terminated from their positions with the Village of Northbrook in relation to the text messages and investigatory interviews, despite neither having any prior disciplinary history.

35. The terminations came shortly after and in direct retaliation for:

    a. Their resistance to unconstitutional searches of their personal devices; and,

    b. Their history of protected complaints and reports about workplace conditions, including sexual harassment and gender discrimination.

36. The timing and circumstances of the terminations demonstrate a clear pattern of retaliation against protected speech and constitutional rights.

37. Throughout their employment, both Plaintiffs maintained exemplary work records and received positive performance evaluations.

38. Neither Plaintiff had received any significant disciplinary actions prior to their terminations.

39. The Village's actions in terminating Plaintiffs represented selective enforcement of policies and breach of investigation confidentiality protocols, in particular because other Police Department employees exchanged text messages about workplace conditions and were not terminated for same.

40. As a direct result of Defendants' actions, Plaintiffs have suffered significant damages including:

    a. Loss of employment and income;

    b. Damage to their professional reputations;

    c.   Emotional distress and related medical issues;

    d.   Loss of planned retirement benefits;

    e.   Violations of their constitutional rights to privacy and free speech.

41. The Village's actions were taken under color of state law, as all individual Defendants were acting in their official capacities as employees and agents of the Village of Northbrook at all relevant times.

42. The constitutional violations perpetrated by Defendants have caused lasting damage to Plaintiffs' professional and personal lives, warranting both compensatory and punitive damages.

## COUNT I - FOURTH AMENDMENT VIOLATION - UNLAWFUL SEARCH
(Plaintiff Shari Nivasch v. Defendant Fainman and the Village (as indemnitor))

43. Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 42 as if fully restated herein.

44. The Fourth Amendment protects against unreasonable searches and seizures and requires that searches be conducted pursuant to warrant, probable cause, or valid consent.

45. On April 3, 2025, Defendant Deputy Chief Marc Fainman demanded to search Plaintiff Nivasch's personal cell phone during an investigatory meeting.

46. Plaintiff Nivasch provided limited and specific consent only to review certain text messages from March 2025 related to an accidental text incident.

47. Defendant Fainman exceeded the scope of this limited consent by:

    a.   Searching messages dating back to February 28, 2025

    b.   Accessing and viewing private vacation photos

    c.   Recording video of the entire message thread

    d.   Accessing private medical information

48. The search was conducted without a warrant, without probable cause, and beyond the scope

7

of Plaintiff's limited consent.

49. No exigent circumstances existed that would justify such an expansive warrantless search of Plaintiff's personal device and private information.

50. The search was unreasonable under the Fourth Amendment as it was:

    a. Excessively intrusive in scope and manner

    b. Not justified by the circumstances

    c. Conducted without proper legal authority

    d. In violation of Plaintiff's reasonable expectation of privacy

51. Defendant had no legitimate government interest that would justify such an invasive search of Plaintiff's personal device and private information.

52. At all times relevant, Defendant were acting under color of state law.

53. As a direct and proximate result of Defendants' unconstitutional search, Plaintiff has suffered:

    a. Violation of her constitutional rights;

    b. Invasion of privacy;

    c. Emotional distress;

    d. Loss of employment;

    e. Damage to professional reputation;

    f. Economic damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendants, and enter the relief sought in the Common Prayer for Relief specified herein.

**COUNT II – TITLE VII RETALIATION**
**(PLAINTIFFS REQUEST TO STAY THIS COUNT**

8

**UNTIL RECEIPT OF A RIGHT TO SUE LETTER)**
(Plaintiffs Shari Nivasch and Michelle Koso v. Defendant Village)

54. Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 42 as if fully restated herein.

55. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3.

56. To state a claim for retaliation under Title VII, an employee must plead that he engaged in protected activity, she suffered an adverse employment action, and that there is a causal connection between the protected activity and the adverse employment action. *Castro v. DeVry University, Inc.*, 786 F.3d 559 (7th Cir. 2015).

i. <u>Shari's 2021 Sexual Harassment Complaint.</u>

57. On or about June 29, 2021, Plaintiff Nivasch filed a sexual harassment complaint with the Village against former Deputy Chief and then Commander Jamie Hanselman for committed quid pro quo and hostile work environment sexual harassment upon her at least as follows as described by Plaintiff in her complaint:

9

> Over time, however, Hanselman's behavior escalated into inappropriate and sexually explicit comments, including:
> - Asking me out for drinks in a way that felt coercive, leading me to fabricate excuses to avoid confrontation.
> - Repeated visits to my office where he discussed pornography, made sexually suggestive remarks, including saying he would "put [me] over [his] knee and slap [my] ass," and claimed he needed a girlfriend.
> - Refusing to stop even after I told him his behavior was unwelcome and made me uncomfortable.

58. At all times, Hanselman was a supervisor with authority to impact Plaintiff's worklife with tangible employment actions, including, *inter alia*, monitoring performance, directing performance, disciplining, recommending for discipline, and conducting performance review.

59. Plaintiff Nivasch brought her concerns to her immediate supervisor, Nancy Vaccaro, consistent with the Village's reporting policy, but Nancy Vacarro provided no meaningful support of intervention to stop the sexual harassment.

60. Plaintiff then requested a meeting with the then-Chief of Police Kennedy, where she reported that Hanselman was treating as like a "slut in a bar," but Kennedy responded as follows as described by Shari:

> On June 16, I left a message for the Chief requesting another meeting. I explained that the lack of documentation put me at risk and I was upset. He called back, and I reiterated that I was working a highly sensitive case and needed time to think. The Chief's response was troubling—he told me that in his experience, complaints like mine often result in cross-complaints and that I had a "license to think about." When I asked what he meant, he referenced my status as a single mother, which I interpreted as a warning about how my professional license and livelihood could be jeopardized.

61. The Village ultimately unfounded Shari's complaint, and nothing happened to Hanselman.

ii. The Fall 2024 Pending Promotion of Hanselman to Deputy Chief.

62. In Fall 2024, Hanselman was being considered for a promotion to Deputy Chief by then Chief John Ustich, who, on information and belief, are close and friendly in relations.

63. On information and belief, Defendant Fainman is also close and friendly in relations with Hanselman.

10

64. At that time, Shari's prior sexual harassment complaint against Hanselman began being discussed throughout the police department rank-and-file as a reason why Hanselman should not be promoted to Deputy Chief, including with Shari, Michelle, and rank-and-file officers discussing publicly how Shari would do with Hanselman being the boss over her unit, given her prior sexual harassment complaint against him.

65. Plaintiff Michelle was a vocal supporter of Shari throughout this time in Fall 2024 and expressed support for woman such as Shari who had stood up to workplace sexual harassment by their supervisors.

66. Michelle also directly supported Shari with peer support and friendship in Fall 2024 as Shari's prior sexual harassment complaint against Hanselman was an increasing subject of discussion throughout the Department.

67. In or about early October, 2024, Michelle directly expressed concerns with Director Nancy Vacarro about Hanselman's anticipated promotion to Deputy Chief given Shari's prior complaint.

68. Hanselman retired in or about March 2025. On information, his retirement was due to the increased pressure from rank-and-file police department employees about his sexual harassment of Shari and the Village's cover-up of same. In addition, on information and belief, Hanselman's retirement was spurred on at that time after other women in the department voiced their concerns about him receiving the promotions in tandem with Shari.

69. Unhappy with the outcome of the Hanselman promotional situation in Fall 2024 and early 2025, Defendants Fainman and Ustich used Shari's accidental text message to Defendant Vacarro as a trumped up and pretextual basis to investigate and terminate both Shari and Michelle.

70. At all times, Fainmain and Ustich were motivated out of retaliation for Shari's sexual harassment complaint against Hanselman that had become an issue in Fall 2024.

71. Fainman and Ustich were also motivated out of retaliation for Michelle's support of Shari's sexual harassment complaint.

72. In acting out their retaliatory motivation, Fainman and Ustich opened an investigation into Shari and Michelle based on Shari's accidentally disclosed text message, subjected both to invasive and retaliatory interviews, breached their privacy by demanding to see their phones during the investigation, breached their privacy by reviewing Shari's texts with Michelle on Shari's phone without Shari's consent to such a broad and unlimited search, and ultimately terminating both Shari and Michelle on April 28, 2025 for their private text conversations.

73. At all times, these adverse actions were in violation of the anti-retaliation provision of Title VII.

74. Shari and Michelle have been damaged by such retaliation in the form of job loss, lost pay and benefits, reputational damage, and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, and against Defendants, and enter the relief sought in the Common Prayer for Relief specified herein.

## COUNT III – IHRA RETALIATION
### (PLAINTIFFS REQUEST TO STAY THIS COUNT UNTIL RECEIPT OF A RIGHT TO SUE LETTER)
(Plaintiffs Shari Nivasch and Michelle Koso v. Defendants Village, Ustich, and Fainman)

75. Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 42 as if fully restated herein.

76. It is a civil rights violation under IHRA for an employer to retaliate against a person who has opposed or reported conduct that the person reasonably and in good faith believes to be discrimination in violation of IHRA. *See* 775 ILCS 5/6-101(A).

i. Shari's 2021 Sexual Harassment Complaint.

12

77. On or about June 29, 2021, Plaintiff Nivasch filed a sexual harassment complaint with the Village against former Deputy Chief and then Commander Jamie Hanselman for committed quid pro quo and hostile work environment sexual harassment upon her at least as follows as described by Plaintiff in her complaint:

> Over time, however, Hanselman's behavior escalated into inappropriate and sexually explicit comments, including:
> - Asking me out for drinks in a way that felt coercive, leading me to fabricate excuses to avoid confrontation.
> - Repeated visits to my office where he discussed pornography, made sexually suggestive remarks, including saying he would "put [me] over [his] knee and slap [my] ass," and claimed he needed a girlfriend.
> - Refusing to stop even after I told him his behavior was unwelcome and made me uncomfortable.

78. At all times, Hanselman was a supervisor with authority to impact Plaintiff's worklife with tangible employment actions, including, *inter alia*, monitoring performance, directing performance, disciplining, recommending for discipline, and conducting performance review.

79. Plaintiff Nivasch brought her concerns to her immediate supervisor, Nancy Vaccaro, consistent with the Village's reporting policy, but Nancy Vacarro provided no meaningful support of intervention to stop the sexual harassment.

80. Plaintiff then requested a meeting with the then-Chief of Police Kennedy, where she reported that Hanselman was treating as like a "slut in a bar," but Kennedy responded as follows as described by Shari:

> On June 16, I left a message for the Chief requesting another meeting. I explained that the lack of documentation put me at risk and I was upset. He called back, and I reiterated that I was working a highly sensitive case and needed time to think. The Chief's response was troubling—he told me that in his experience, complaints like mine often result in cross-complaints and that I had a "license to think about." When I asked what he meant, he referenced my status as a single mother, which I interpreted as a warning about how my professional license and livelihood could be jeopardized.

81. The Village ultimately unfounded Shari's complaint, and nothing happened to Hanselman.

ii. The Fall 2024 Pending Promotion of Hanselman to Deputy Chief.

13

82. In Fall 2024, Hanselman was being considered for a promotion to Deputy Chief by then Chief John Ustich, who, on information and belief, are close and friendly in relations.

83. On information and belief, Defendant Fainman is also close and friendly in relations with Hanselman.

84. At that time, Shari's prior sexual harassment complaint against Hanselman began being discussed throughout the police department rank-and-file as a reason why Hanselman should not be promoted to Deputy Chief.

85. Plaintiff Michelle was a vocal supporter of Shari throughout this time in Fall 2024 and expressed support for woman such as Shari who had stood up to workplace sexual harassment by their supervisors.

86. Michelle also directly supported Shari with peer support and friendship in Fall 2024 as Shari's prior sexual harassment complaint against Hanselman was an increasing subject of discussion throughout the Department.

87. Hanselman retired in or about March 2025. On information, his retirement was due to the increased pressure from rank-and-file police department employees about his sexual harassment of Shari and the Village's cover-up of same. In addition, on information and belief, Hanselman's retirement was spurred on at that time after other women in the department voiced their concerns about him receiving the promotions in tandem with Shari.

88. Unhappy with the outcome of the Hanselman promotional situation in Fall 2024 and early 2025, Defendants Fainman and Ustich used Shari's accidental text message to Defendant Vacarro as a trumped up and pretextual basis to investigate and terminate both Shari and Michelle.

89. At all times, Fainmain and Ustich were motivated out of retaliation for Shari's sexual harassment complaint against Hanselman that had become an issue in Fall 2024.

90. Fainman and Ustich were also motivated out of retaliation for Michelle's support of Shari's sexual harassment complaint.

91. In acting out their retaliatory motivation, Fainman and Ustich opened an investigation into Shari and Michelle based on Shari's accidentally disclosed text message, subjected both to invasive and retaliatory interviews, breached their privacy by demanding to see their phones during the investigation, breached their privacy by reviewing Shari's texts with Michelle on Shari's phone without Shari's consent to such a broad and unlimited search, and ultimately terminating both Shari and Michelle on April 28, 2025 for their private text conversations.

92. At all times, these adverse actions were in violation of the anti-retaliation provision of IHRA.

93. Shari and Michelle have been damaged by such retaliation in the form of job loss, lost pay and benefits, reputational damage, and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, and against Defendants, and enter the relief sought in the Common Prayer for Relief specified herein.

### COUNT 4 – FOURTEENTH AMENDMENT EQUAL PROTECTION DEPRIVATION VIA 42 U.S.C. § 1983 (GENDER DISCRIMINATION)
(Plaintiffs Shari Nivasch and Michelle Koso v. Defendant Ustich)

94. Plaintiff incorporates Paragraphs 1 through 42 as if fully restated herein.

95. The Fourteenth Amendment of the United States Constitution provides that "No State. . .shall deny to any person within its jurisdiction the equal protection of the laws." This jurisdiction has recognized that the Equal Protection Clause prohibits denial of equal protection of the laws in the employment context on the basis of gender discrimination, and that qualified immunity does not

attach to gender-based discriminatory conduct by government officials. *See Hildebrandt v. Ill. Dep't of Natural Resources*, 347 F.3d 1014, 1040-41 (7th Cir. 2003).

96. At all times, Defendant Ustich acted under color of law.

i. Shari's 2021 Sexual Harassment Complaint.

97. On or about June 29, 2021, Plaintiff Nivasch filed a sexual harassment complaint with the Village against former Deputy Chief and then Commander Jamie Hanselman for committed quid pro quo and hostile work environment sexual harassment upon her at least as follows as described by Plaintiff in her complaint:

> Over time, however, Hanselman's behavior escalated into inappropriate and sexually explicit comments, including:
> - Asking me out for drinks in a way that felt coercive, leading me to fabricate excuses to avoid confrontation.
> - Repeated visits to my office where he discussed pornography, made sexually suggestive remarks, including saying he would "put [me] over [his] knee and slap [my] ass," and claimed he needed a girlfriend.
> - Refusing to stop even after I told him his behavior was unwelcome and made me uncomfortable.

98. At all times, Hanselman was a supervisor with authority to impact Plaintiff's worklife with tangible employment actions, including, *inter alia*, monitoring performance, directing performance, disciplining, recommending for discipline, and conducting performance review.

99. Plaintiff Nivasch brought her concerns to her immediate supervisor, Nancy Vaccaro, consistent with the Village's reporting policy, but Nancy Vacarro provided no meaningful support of intervention to stop the sexual harassment.

100. Plaintiff then requested a meeting with the then-Chief of Police Kennedy, where she reported that Hanselman was treating as like a "slut in a bar," but Kennedy responded as follows as described by Shari:

16

On June 16, I left a message for the Chief requesting another meeting. I explained that the lack of documentation put me at risk and I was upset. He called back, and I reiterated that I was working a highly sensitive case and needed time to think. The Chief's response was troubling—he told me that in his experience, complaints like mine often result in cross-complaints and that I had a "license to think about." When I asked what he meant, he referenced my status as a single mother, which I interpreted as a warning about how my professional license and livelihood could be jeopardized.

101. The Village ultimately unfounded Shari's complaint, and nothing happened to Hanselman.

ii. The Fall 2024 Pending Promotion of Hanselman to Deputy Chief.

102. In Fall 2024, Hanselman was being considered for a promotion to Deputy Chief by then Chief John Ustich, who, on information and belief, are close and friendly in relations.

103. On information and belief, Defendant Fainman is also close and friendly in relations with Hanselman.

104. At that time, Shari's prior sexual harassment complaint against Hanselman began being discussed throughout the police department rank-and-file as a reason why Hanselman should not be promoted to Deputy Chief.

105. Plaintiff Michelle was a vocal supporter of Shari throughout this time in Fall 2024 and expressed support for woman such as Shari who had stood up to workplace sexual harassment by their supervisors.

106. Michelle also directly supported Shari with peer support and friendship in Fall 2024 as Shari's prior sexual harassment complaint against Hanselman was an increasing subject of discussion throughout the Department.

107. Hanselman retired in or about March 2025. On information, his retirement was due to the increased pressure from rank-and-file police department employees about his sexual harassment of Shari and the Village's cover-up of same. In addition, on information and belief,

17

Hanselman's retirement was spurred on at that time after other women in the department voiced their concerns about him receiving the promotions in tandem with Shari.

108. Unhappy with the outcome of the Hanselman promotional situation in Fall 2024 and early 2025, Defendants Fainman and Ustich used Shari's accidental text message to Defendant Vacarro as a trumped up and pretextual basis to investigate and terminate both Shari and Michelle.

109. At all times, Fainmain and Ustich were motivated out of retaliation for Shari's sexual harassment complaint against Hanselman that had become an issue in Fall 2024.

110. Fainman and Ustich were also motivated out of retaliation for Michelle's support of Shari's sexual harassment complaint.

111. In acting out their retaliatory motivation, Fainman and Ustich opened an investigation into Shari and Michelle based on Shari's accidentally disclosed text message, subjected both to invasive and retaliatory interviews, breached their privacy by demanding to see their phones during the investigation, breached their privacy by reviewing Shari's texts with Michelle on Shari's phone without Shari's consent to such a broad and unlimited search, and ultimately terminating both Shari and Michelle on April 28, 2025 for their private text conversations.

112. At all times, these adverse actions were in violation of the Equal Protection Clause of the 14th Amendment.

113. Shari and Michelle have been damaged by such retaliation in the form of job loss, lost pay and benefits, reputational damage, and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, and against Defendants, and enter the relief sought in the Common Prayer for Relief specified herein.

18

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, and order the following relief:

A. Compensatory damages in an amount to be determined at trial for:

1. Loss of employment and income

2. Loss of benefits including retirement benefits

3. Emotional distress and related medical expenses

4. Damage to professional reputation

5. Privacy violations

6. Constitutional rights violations

B. An order directing the Village of Northbrook to:

1. Reinstate Plaintiffs to their former positions

2. Expunge all references to these incidents from Plaintiffs' personnel files

3. Cease and desist from further retaliatory actions

4. Implement appropriate training regarding constitutional rights of employees

D. Declaratory judgment that Defendants' actions violated Shari's constitutional rights under the Fourth Amendment;

E. Pre-judgment and post-judgment interest as allowed by law;

F. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

G. Such other relief as this Court deems just and proper.

### JURY DEMANDED

Respectfully submitted,

**SHARI NIVASCH**
**MICHELLE KOSO**

19

*/s/ Cass T. Casper*

By:_____

One of the Attorneys for Plaintiffs

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 311
E: cass.casper@dispartilaw.com

*David Petrich, Esq.*
Sandman, Levy & Petrich, LLC
134 North LaSalle Street, 9th Floor
Chicago, Illinois   60602
Phone:  312/726-1692
Fax:   312/726-1687
dpetrich@slplaw.com